### MAIBOHM et al. v. R. C. A. VICTOR CO.
### No. 2305.

District Court, D. Maryland.

Feb. 26, 1936.

C. B. DesJardins, of Church & Church, of Washington, D. C., for plaintiffs.

George L. Wilkinson and Howard W. Hodgkins, of Wilkinson, Huxley, Byron & Knight, both of Chicago, Ill., John W. Michael, of Bottum, Hudnall, Lecher, Michael & Whyte, of Milwaukee, Wis., and Edwin F. Samuels and Thomas W. Y. Clark, both of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

The present suit is one for alleged infringement of patent No. 1,930,980, issued October 17, 1933, to H. C. Maibohm, application filed October 30, 1929, for a variable electrical resistor and switch. The plaintiffs are the present owners of the patent.

By stipulation the issue has been reduced to the question of the validity of the patent. Briefly stated, the patent is for the combination of a standard form of variable resistance or rheostat used as a volume control in radio receiving sets, with a known form of snap switch, for making and breaking the power circuit of such sets. That is to say, both the variable resistor and the snap switch are admittedly old in the art, but it is the combination of the two for which invention is claimed.

When the radio art was in its early stages, batteries were used to operate radio receivers, and the slow make and break switches, well known in the art, were adequate; but when inventions in radio tubes made possible the use of high-voltage house alternating electric current for operating radio receiving sets, this high voltage rendered the slow make and break switches inadequate, because the resulting spark not only corroded the switches, but created a fire hazard.

While there are eight claims in the patent, plaintiffs rely upon only four of these claims, namely, Nos. 5, 6, 7, and 8, and adopt No. 6, which is as follows, as being the more typical, and as adequately embracing the entire invention: "A monocontrol variable electrical resistor and switch unit comprising: an electrical resistance element, a frame including means for mounting the unit and for supporting said resistance element, a rotatable shaft jour-

naled in said frame, an arm associated with said resistance element and rotatable by said shaft to adjustably vary the electrical resistance of said unit, an instantaneously acting snap switch carried by said frame and having an actuating arm eccentrically disposed with respect to the axis of said shaft and terminating in an open fork, and a trip finger carried by said shaft and freely engageable and disengageable with said fork by rotation of said shaft to non-restrainingly trip said switch to open-circuit or closed-circuit positions irrespective of the rate at which said shaft be rotated."

Summarizing this claim, we find that the snap switch is mounted on the frame of the variable resistor, and the shaft of the latter, by which the resistance is adjusted by the operator through the means of an outside controller knob, has attached thereto an arm carrying a pin or trip finger, and the operating arm or tumbler of the snap switch has a fork in it. The parts are so arranged that when the radio receiver is to be used, the first movement of the controller knob snaps on the switch, and further movement of the knob cuts out resistance so as to increase the volume. Reversely, when the receiver set is in use and it is desired to discontinue its use, movement of the controller knob cuts in the resistance and snaps the switch to "off" position.

Variations in the construction of the plaintiffs' device and the device of the defendant we need not consider, because, as already stated, infringement is not now denied, and we are concerned merely with the question of the validity of the patent.

In support of its claim that the patent is invalid, the defendant makes the four following defenses: First: That the August, 1927, edition of "Radio News" contains an article which constitutes a publication of the patent device more than two years prior to the filing of the application for it. Second, that the patent device was in public use and on sale in numerous instances more than two years prior to the filing of the application for the patent. Third, that the patent discloses no invention, but merely the exercise of mechanical skill in view of prior patents and publications. Fourth, that the claims of the patent in issue are anticipated by prior patents.

We have concluded that it is unnecessary to consider more than the first two of these four defenses. And, indeed, we believe that the first one is entirely suffi-

cient and conclusive of the invalidity of the patent.

The rule is so well established that citation of authorities is not necessary, to the effect that in order for a prior publication, within the meaning of section 4886 of the Revised Statutes, as amended (35 U.S.C.A. § 31), to invalidate a patent, such publication must describe the invention in such a manner that any person skilled in the art can practice it without further instruction. The precise question, therefore, is: Does the weight of the credible evidence in the present case establish that the article in question, considered as a whole, answers this requirement?

The article consists of the following text, accompanied by a diagrammatic scheme and two photographs:

"Six-Tube Set Operates on Alternating Current.

"A six-tube receiver, operating direct from the 110-volt, 60-cycle house lighting lines, is the latest product of an Ohio radio firm. It employs no battery, or combination of battery and charger; the A.C. being applied in unrectified form to the filaments of the special tubes used and, in rectified and filtered form, to their plates. To place it in operation, one need only connect the aerial and ground wires, screw an attachment plug into the nearest lamp socket, plug in the loud speaker and snap on the switch.

"The set is of the single-control type, the one principal tuning knob operating three separate variable condensers, connected by a pulley-and-string arrangement. The circuit comprises two stages of tuned radio-frequency amplification, a non-regenerative detector, and three stages of straight transformer-coupled audio amplification. The antenna coil, AC, is an autotransformer, the primary section being adjustable by means of a simple plug-and-jack scheme. Four taps are provided.

"A high-value variable resistor, VR, connected in series with the primaries of the R.F. transformers, acts as a volume and oscillation control. Additional control of the volume is made possible by another resistor, connected across the secondary of the second A.F. transformer.

"The six tubes are arranged in a straight line along the rear edge of the receiver's subpanel, but their circuit positions do not follow in the usual R.F.-detector-A.F. order. Instead, the first tube on

the left is the last audio, the second the first R.F.; and the others are as indicated in the schematic diagram shown herewith.

"Combined with the variable resistor VR is a small snap-switch, which is automatically turned on when the resistor knob is disturbed from its 'off' position. This switch, it will be noted, is connected in one side of the 110-volt power circuit, and controls the current to the filament-heating transformer, FT, and the 'B' supply transformer, PT."

The defendant introduced the testimony of four witnesses, all persons trained in the art, and in no way related to the parties in suit, who stated that upon the knowledge which they had of radio receiving sets in August, 1927, they could have constructed the patent device with the aid of this article and its accompanying diagram and photographs without further instruction or assistance.

As opposed to this testimony, the plaintiffs introduced a radio expert, who was equally emphatic that he did not find in the article, together with the diagram and photographs, sufficient teaching to enable him to construct the patent device. This witness was connected with one of the companies affiliated with the plaintiffs.

In addition, we have the testimony of the plaintiff, Mr. Harry C. Maibohm, which was to the same effect as that of the witness just referred to. But less weight, it is believed, should be given to Mr. Maibohm's testimony on this precise point, because of his interest in the suit, and because he admitted that he was not sufficiently trained in the radio art to analyze the drawing accompanying the article, or to say just what it does disclose.

There was a third witness on behalf of the plaintiffs, Mr. Smith, whose testimony, while to the same effect as those of the two preceding witnesses for the plaintiffs, I consider was nevertheless even less convincing than theirs because he was less familiar with and skilled in the art, and he spoke with less conviction.

While obviously the question before us is not to be determined by the number of witnesses, pro or con, or by mere accumulation of testimony, nevertheless, the court is satisfied that the more credible evidence is that of defendant's witnesses. This conclusion is greatly strengthened by the fact that according to the plaintiff Harry C. Maibohm's own testimony, the Ohio firm referred to in the text of the article was his firm, and that the instrument described in the article was its product, and had been loaned to the Radio News. The evidence is silent as to exactly who made the diagrammatic scheme accompanying the article; but it is significant that it is not a mere advertisement, but a news article, although the photographs admittedly are not very distinct.

■ Furthermore, and this is believed to be especially significant, the article was not cited by the Patent Office. Just why is not disclosed. This certainly helps to rebut the presumption of validity of the patent, with which we start, by reason of its having been issued by the Patent Office.

Were there any doubt as to the sufficiency of this prior publication so as to require us to declare the patent in suit invalid, the testimony with respect to the second ground of defense would seem to be conclusive, namely, with respect to the claim that the device covered by the patent was in public use and on sale more than two years prior to the filing of the application for the patent.

■ Conceding that the burden is upon the defendant to establish such prior use and sale beyond a reasonable doubt, this we believe has in fact been done by the testimony of the plaintiff Harry C. Maibohm himself, even if the great mass of evidence contained in the depositions be totally cast aside and not considered; that is to say, by virtue of what this witness said in his letters which are in evidence, it seems to conclusively appear that in April, 1927, he designed, and the firm of Hart & Hegeman manufactured for his company, snap switches for the combination of the patent in suit, as shown by Mr. Maibohm's own pencil drawings attached to his letter of April 7, 1927, written for his company, the Simplex Radio Company, of which he was then president. And the clear inference from this testimony is that his company, after it had ordered and received prior to June, 1927, some seventy-five snap switches for use in combination with variable resistors, must have installed a number of these combinations in radio receiving sets, some of which must have been actually sold and delivered prior to October 30, 1927. This reasonable inference would seem to be borne out by evidence to the effect that in March, 1927, Mr. Maibohm's company wrote that its production was being held

up because it needed the device in suit. It is, of course, unfortunate that the records of his company which, presumably, would definitely establish one way or the other whether the sales were made within the requisite period, have been destroyed by fire.

The court, as previously stated, is not resting its decision upon a finding of prior public use or sale, because the claim of prior publication is definitely proven.

For the foregoing reasons, it becomes unnecessary to consider the other defenses relied upon by the defendant.

· I will sign a decree in accordance with this opinion.